**United States District Court**
**Northern District of Indiana**
**Hammond Division**

Mary E. Wilson,

      Plaintiff,

      v.                                Civil Action No. 4:10-CV-15 JVB

United States of America,
d/b/a United States Postal Service,

      Defendant.

**OPINION AND ORDER**

One rainy Saturday evening, Plaintiff Mary Wilson went to the West Lafayette Post Office to mail a letter. The retail counter of the post office had already been closed, but the lobby was open for self-service. As Plaintiff was entering the lobby, she slipped on the water that had been tracked in from outside and fell, injuring her knee. She sued the post office for negligence but the post office moved for summary judgment, claiming sovereign immunity. The Court finds that sovereign immunity does not shield Defendant from suit in this case.

**A. Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 323.). If the moving party supports its motion for summary judgment with affidavits or other materials, then the burden shifts to the non-moving party to show that an issue of material fact exists. *Id.*

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B. Facts**

Shortly after sunset, on Saturday, March 24, 2007, Plaintiff Mary Wilson went to the United States Post Office in West Lafayette, Indiana, to mail a letter. The retail counter was already closed and all employees were gone for the day, but the lobby was open for customers

who wanted to mail letters, purchase stamps from a machine, or check their mail boxes. Two sets of sliding doors provided entrance to the lobby, with a commercial floor mat between them.

When Plaintiff stepped onto the mat, it was wet and squishy from the rainwater tracked in by customers throughout the day. As Plaintiff approached the second doorway, she slipped and sustained knee injury that would require surgery. From the floor, she saw that the water on the floor had accumulated into puddles. There was no "wet floor" sign in the area.

Lani Lorey manages the facility. As manager she is the equivalent of the postmaster. Lorey has been in charge of the facility since 2005. The lobby of the post office has been kept open around the clock since the 1990s. Lorey decided to continue that practice to accommodate the customers.

Lorey kept the lobby open pursuant to section 126.43 of the Postal Operations Manual:

> **126.43 Lobby Hours**. At a minimum, customers must have access to their PO Boxes during all retail service hours of operation. Separate PO Box lobbies should remain open when someone is on duty in the postal unit. At the postmaster's discretion, lobbies may remain open 24 hours a day to allow customers access to PO Boxes and self-service equipment, provided that customer safety and security provisions are deemed adequate by the Inspection Service.

(Lorey Dep., Ex. 8.)

The Postal Inspection Service last reviewed the West Lafayette office in the 1990s. According to Laura Carter, the current inspector for the Greater Indiana District, that review would have included inspection of the facility itself, surrounding area, parking lot and grounds, and postal service secured databases. The investigation report would have been reviewed with the postmaster who would make the decision whether to keep the lobby open around the clock. The report has since been destroyed in the normal course of business. Inspector Carter is not aware of any incidents of crime or other problems at the West Lafayette Post Office.

In addition to the Postal Operations Manual, a document titled "MS-47 Housekeeping Postal Facilities Manual," set forth the norms for maintaining a safe customer environment at the West Lafayette Post Office. Among other things, the manual provides that "[i]t is the responsibility of the postmaster/manager of a postal facility to assure that custodial maintenance is sustained at a satisfactory level." Also, at the time of Plaintiff's fall, there was in place a Supervisor's Safety Handbook that outlined, among other things, the requirements for floor maintenance:

> **8-7 Floors**
>
> > 8-7.1 **General**
> >
> > > You must ensure that your employees follow these general procedures to prevent potential slip, trip, or fall accidents.
> >
> > . . .
> >
> > > k.    Give customer areas special consideration. The improper placement of mats or rugs (or lack of them) can cause customer injuries and result in significant liability to the Postal Service.
> >
> > . . .
> >
> > 8-7.3 **Wet Floors**
> > Instruct your employees to observe the following safety guidelines for wet floors:
> >
> > > a.    Keep wet floor areas roped off with "Wet Floor" signs or high-visibility safety barricades until the floors are dry.
> > > b.    Always maintain a dry area for pedestrian traffic.
> > > c.    Place rubber mats or all-weather mats at entrances, including lobby areas, when inclement weather develops.
> > > d.    Damp mop as often as necessary where excessive moisture accumulates on indoor stairs, lobby floors, or high-traffic areas.

(Handbook at 53–54.)

The parties agree that, when Plaintiff fell, she was a business invitee.

**C. Sovereign Immunity Standard**

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399 (1976) (quotation marks, alteration, and citations omitted). The Supreme Court "has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276 (1957). The Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671–2680, provides the exceptions to sovereign immunity, allowing the government to be sued in tort as a private individual would be under like circumstances. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004). "But the Act also limits its waiver of sovereign immunity in a number of ways." *Id.*

For example, the Act does not apply in cases where a government employee's action or omission to act is within the employee's discretion:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680.

"[T]he discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz v. United States*, 486 U.S. 531, 537 (1988). The purpose of this exception is to "prevent judicial

'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).

> The discretionary-function exception has two requirements. First, the conduct alleged must involve an element of judgment or choice. Conduct cannot be discretionary if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow because the employee has no rightful option but to adhere to the directive. Second, given that the exception protects only governmental actions and decisions based on considerations of public policy, the challenged discretionary conduct must amount to a permissible exercise of policy judgment. The government actor's intent is of no consequence to our analysis, nor must the actor belong to the policymaking or planning ranks of government in order for the exception to apply. All that matters is the nature of the actions taken and whether they are susceptible to policy analysis.

*Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (citations, quotations marks, ellipsis, and brackets omitted). In short, whether the discretionary function exception applies depends on two factors: "First, whether the government employees violated a specific mandatory statute, regulation, or policy, and second, whether the conduct involved was the type of conduct that Congress intended to shield from liability." *Alinsky v. United States*, 415 F.3d 639, 647 (7th Cir. 2005) (citing *Berkowitz*, 486 U.S. at 536).

**D. Analysis**

The government moved for summary judgment on Plaintiff's claim under the Federal Tort Claims Act. The government maintains it is immune from Plaintiff's slip-and-fall lawsuit because the manager of the West Lafayette Post Office, Lani Lorey, exercised discretion to keep the post office open after the retail counter closed. According to the government, this decision was made with the knowledge that no employees would be present outside of the regular

6

business hours to maintain the floors, and allowing Plaintiff's suit to proceed would place the Court in a Monday-morning-quarterback position. In essence, while the government concedes that it has duty to keep its premises safe around the clock, it contends that it has not consented to be sued for a breach of such duty.

Plaintiff's Response acknowledges that sovereign immunity protects Lorey's decision to keep the post office lobby open. However, she argues that such immunity does not extend to Lorey's failure to keep the premises safe, the conduct that is at the heart of Plaintiff's challenge. According to Plaintiff, Lorey had no discretion in this area.

The government falls short of establishing sovereign immunity. Government relies on the Postal Operations Manual for Lorey's discretion to keep the post office open around the clock: "At the postmaster's discretion, lobbies may remain open 24 hours a day to allow customers access to PO Boxes and self-service equipment, provided that customer safety and security provisions are deemed adequate by the Inspection Service." (Postal Operations Manual § 126.43.) The Manual's text shows that the postmaster has no discretion unless the Inspection Service deems the post office safe and secure. It follows then, that the postmaster's discretionary decision must be reasonably close in time to the Inspection Service's determination, and a single inspection does not give license to generations of the postmasters to rely for their discretion on what was deemed safe and secure decades earlier. The Court does not need to decide how close in time the safety determination must be for the postmaster to exercise proper discretion; suffice it to say, that seventeen years in our rapidly changing world is too far removed (the last inspection happened around 1990). Accordingly, the Court finds that, Lorey had no discretion to keep the post office open around the clock, because the Inspection Service had not deemed,

7

within a reasonable time frame of her decision, that the post office was safe and secure for its customers. If other facts are established at trial, the Court may reconsider this finding, but as the record stands now, the government's motion for summary judgment can be denied on this basis alone.

However, even if Lorey did exercise proper discretion in keeping the post office open, sovereign immunity does extend to Plaintiff's slip and fall suit. In its defense, the government submits an unpublished Sixth Circuit opinion, *Bell v. United States*, 2000 WL 1720932 (6th Cir. Nov 6, 2000). Although the case dealt with an analogous situation and the Sixth Circuit held that sovereign immunity shielded the government, the Court is unpersuaded that the Seventh Circuit would have reached the same conclusion. In *Bell*, under almost identical circumstances, a customer entered a Post Office in Louisville, Kentucky, on a rainy Saturday afternoon and slipped and fell on the wet floor. As a result of the fall, the customer suffered a knee injury and sued the Post Office.

As a first step, the Court of Appeals for the Sixth Circuit set out to identify the government's conduct at issue. The customer argued that it was the post office's failure to maintain the premises in a reasonably safe manner. *Id*. at *3. The Sixth Circuit instead focused on the "postmaster's conduct in deciding under what circumstances to allow the lobby area to remain open to the public at times when the service windows were closed." *Id*. at *4. The court then determined that such conduct was of the discretionary sort that the exception was designed to shield:

> The POM allows the postmaster to exercise his discretion with regard to opening the lobby to provide customers after-hours access to their post office boxes when there will be no postal employees in the building, so long as customer safety, security provisions and police protection are "deemed adequate." Although the

8

> Supervisor's Safety Handbook spells out in detail the wet floor policies that are mandatory when employees are present and the Post Office is open for business, those polices are not applicable to the after-hours situation. Plainly it is the postmaster who must "deem" the after-hours safety and security provisions adequate; this determination falls squarely within the postmaster's discretionary judgment and satisfies the first prong of the discretionary function test.
>
> As to the second prong of the discretionary function test—whether this is the sort of conduct the exception was designed to shield —the *Rosebush* decision is directly on point. The postmaster's decision to allow access to the public-without requiring postal employees to check the facility whenever it rains during the off-hours-is both a decision relating to making federal property safe for visitors and a decision relating to warning of potential danger. We have held that both types of decisions fit within the second prong of the discretionary function test. Therefore, the conduct of which Ms. Bell complains falls within the discretionary function exception to the FTCA.

*Id*. at *4–5.

Relying on *Bell*, the government insists that the conduct at issue is Lorey's discretionary decision to keep the West Lafayette Post Office open even when no employees were present at the facility. As a result, the government contends that sovereign immunity shields the post office from Plaintiff's suit.

The government's argument reaches too far. According to this logic, the mere fact that the government decides in its discretion to build a post office would subsume all the details of running its business and maintaining its premises, so that no person could ever sue the post office. Yet, it isn't so. Just as the decision to build a post office does not automatically encompass all other aspects of its operations, so the decision to keep the lobby open after the retail counter closes does not in itself override the directives for safe operation of the premises. Insofar as the conduct about which Plaintiff complains is the government's failure to keep the floors in a safe condition, Lorey's discretionary decision to keep the lobby open does not shield the government from suit.

9

Moreover, the government has not shown any other basis for immunity from Plaintiff's claim. The maintenance of floors is prescribed in the Safety Handbook but the government argues that the Handbook is not controlling, does not apply when the retail counter is closed, and is too vague in any case. Also, while the government concedes that it does not have the discretion to abandon floor maintenance during regular business hours, it contends that the Safety Manual has nothing to do with this obligation. However, the government does not explain why, in the absence of the Handbook, and aside from its good will, it should keep the floors free of hazards.

The Court disagrees with the government that the Handbook is not controlling or that it is too vague. The instructions in the Handbook are specific:

> 8-7.3 **Wet Floors**
> Instruct your employees to observe the following safety guidelines for wet floors:
>
> a. Keep wet floor areas roped off with "Wet Floor" signs or high-visibility safety barricades until the floors are dry.
> b. Always maintain a dry area for pedestrian traffic.
> c. Place rubber mats or all-weather mats at entrances, including lobby areas, when inclement weather develops.
> d. Damp mop as often as necessary where excessive moisture accumulates on indoor stairs, lobby floors, or high-traffic areas.

(Handbook a 53–54.)

The Court also disagrees with the government that the Handbook is meant only for the times when the retail counter is open. The Handbook does not make such a distinction. In fact, the Handbook does not speak of only certain areas of the post office and does not differentiate between the hours when the business at the post office can be conducted only in the lobby and

the hours when patrons can also access the retail counter. Therefore, the Court is not persuaded that it was within Lorey's discretion to decide not to keep the floors free of hazards on weekends.

**D. Conclusion**

The Court denies Defendant's Motion for Summary Judgment (DE 23).

SO ORDERED on November 21, 2011.

                                            S/ Joseph S. Van Bokkelen
                                            JOSEPH S. VAN BOKKELEN
                                            UNITED STATES DISTRICT JUDGE